IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al. | * * * * | |
| v. | * * | Civil Nos. CCB-03-3408, CCB-03-3414 |
| PORTER HAYDEN COMPANY, et al. | * * * | |

******

**MEMORANDUM**

Now pending before the court are two motions to exclude expert testimony filed by Porter Hayden Company ("Porter Hayden"). National Union Fire Insurance Company of Pittsburgh, Pa. and American Home Assurance Company (collectively, "the Insurers") offer as evidence the purported expert opinions of Dr. Michael A. Brown ("Brown") and Dr. Charles H. Mullin ("Mullin"). Brown intends to testify that: (1) the Porter Hayden Bodily Injury Trust ("the Trust") has resolved "unimpaired non-malignant claims," or claims from individuals without physical impairment,[1] that are not compensable in the tort system;[2] and (2) the Trust's screening procedures are unreliable, as it has likely paid claimants despite insufficient evidence of asbestos exposure. (*See* Brown's Rep., ECF No. 341-1, at 6–7.) Mullin intends to testify as to (1) how the Trust's valuation of claims compares to "historical" amounts paid by Porter Hayden in the

---

[1] The Trust resolves asbestos claims against Porter Hayden pursuant to Trust Distribution Procedures ("TDP"), which use the following categories of claims: "Bilateral Asbestos-Related Non-Malignant Disease (Level I), Disabling Severe Asbestosis (Level II), Other Cancer (Level III), Lung Cancer (Level IV)[,] and Mesothelioma (Level V)." (Insurers' Corrected Mot. for Summ. J., ECF No. 345, at 8.) Brown asserts that Level I claims are mostly comprised of unimpaired nonmalignant claims. (*See, e.g.*, Dep. of Brown, ECF No. 352-1, at 81:9–12.)
[2] Brown explains that unimpaired nonmalignant claims are not compensable in the tort system because those claims are placed on the inactive docket and do not move to the active docket unless there is evidence of physical impairment.

1

tort system and (2) the loss allocable to Porter Hayden's excess insurance policies, which were issued by the Insurers. (*See* Mullin's Rep., ECF No. 347-1, at 7–8; *see also* Jan. 2, 2014, Mem., ECF No. 367, at 1–2 & n.1 (describing the difference between "primary" and "excess" insurance and explaining that Porter Hayden's coverage program included both primary and excess liability insurance).) The issues in this case have been fully briefed, and oral argument was held on November 20, 2013. For the reasons stated below, the court will grant Porter Hayden's motion to exclude the expert testimony of Brown, and will grant in part and deny in part the motion to exclude the expert testimony of Mullin.

## ANALYSIS

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking to introduce expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993). A district court is afforded "great deference . . . to admit or exclude expert testimony under *Daubert*." *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also Daubert*, 509 U.S. at 592–95 ("The inquiry envisioned by Rule 702 is . . . a flexible one . . . ."). "In applying *Daubert*, a court evaluates the methodology or reasoning that the proffered scientific or technical expert uses to reach his conclusion; the court does not evaluate the conclusion itself," *Schaefer*, 325 F.3d at 240,

although "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In essence, the court acts as gatekeeper, only admitting expert testimony where the underlying methodology satisfies a two-pronged test for (1) reliability and (2) relevance. *See Daubert*, 509 U.S. at 589.

### A. Motion to Exclude Brown's Testimony

Porter Hayden argues that Brown's testimony must be excluded because: (1) he is not qualified; (2) even if he were qualified, he is unable to identify any claims that were not properly reviewed or should not have been paid by the Trust; and (3) he is unable to identify the methodology used to evaluate the Trust's procedures. The court need not delve into Brown's qualifications, as it determines his testimony is not based on reliable methodology or sufficient facts and does not constitute "scientific, technical, or other specialized knowledge" under Rule 702(a).[3] His testimony, in short, would not be helpful to the trier of fact.

The court agrees with Porter Hayden that, in reaching his conclusions, Brown did not use reliable methodology or sufficient facts. When asked to describe the "standards" used to determine the Trust's procedures are unreliable, Brown simply stated that he used "[e]ssentially logic." (*See* Dep. of Brown, ECF No. 341-2, at 47:14–17.) Indeed, although he concludes that the Trust's screening procedures are unreliable, he does not identify any claims that should not have been approved. Moreover, his report does not monetize the impact of the Trust's alleged failure to use reliable procedures. (*Id.* at 170:23–171:10.)

Brown also admitted that, in determining the Trust has paid "thousands" of unimpaired nonmalignant claims, (Brown's Rep. at 6), he did not use quantitative analysis. (*See* Dep. of

---

[3] The court notes, however, that Brown has no medical experience, and so he is unable to determine whether any particular claimant is physically impaired. (*See* Dep. of Brown, ECF No. 341-2, at 73:6–16, 88:23–89:9.) Moreover, Brown has never been qualified as an expert witness in court. (*See id.* at 30:25–31:3.)

3

Brown, ECF No. 341-2, at 76:18–24.)  Indeed, he did not review any Level I claims paid by the Trust, despite the fact that he had access to this information through the claims database.  (*Id.* at 76:25–77:21; *see also* Dep. of Brown, ECF No. 352-1, at 81:3–82:3.)[4]  Brown cannot identify a single Level I claim paid by the Trust that qualifies as an unimpaired nonmalignant claim.  (Dep. of Brown, ECF No. 341-2, at 88:23–89:3.)

Rather than describe the basis for his conclusions, Brown made sweeping statements regarding his confidence and experience.  For example, when asked how he could determine the "majority" of Level I claims were from individuals without physical impairment, if he cannot make that determination as to any individual claim, Brown answered, "I suppose I am drawing in part on my experience."  (*Id.* at 89:4–9.)  He also stated, "I know the vast majority of [Level I] claims would be unimpaired nonmalignant claims by any reasonable definition."  (Dep. of Brown, ECF No. 352-1, at 81:25–82:3; *see also id.* at 81:9–12 ("I would be extremely confident that the vast majority of claims in Category 1 . . . would not be considered impaired under any reasonable definition.").)  The court cannot admit Brown's testimony based on his unsupported statement that he is relying on his "experience" when he has not established what that experience is and how it would assist him to form his opinion.  Nor is Brown's confidence in his testimony a proper basis for admitting it.  *See Joiner*, 522 U.S. at 146 (reasoning that the court need not

---

[4] The court agrees with Porter Hayden that the fact that Brown is opining about claims already paid and had access to the claims database makes this case entirely different from the two Delaware bankruptcy cases cited by the Insurers.  *See In re Armstrong World Indus.*, 348 B.R. 111 (D. Del. 2006); *In re Federal-Mogul Global, Inc.*, 330 B.R. 133 (D. Del. 2005).  The experts in *Armstrong* and *Federal-Mogul* determined potential liability for pending and future asbestos claims, and so they had to estimate the number and value of those claims.  *Armstrong*, 348 B.R. at 125–32; *Federal-Mogul*, 330 B.R. at 157–65.  Here, by contrast, Brown did not need to estimate the number of different kinds of claims resolved by the Trust, as he had access to this information through the database.

accept the *ipse dixit* of the expert in deciding whether his testimony is admissible). His testimony, lacking proper support, amounts to mere speculation.

Moreover, Brown's testimony does not reflect "scientific, technical, or other specialized knowledge," as required by Rule 702(a). The Fourth Circuit has explained that expert testimony may be appropriate when, for example, it elucidates complicated evidence. *See United States v. Benkahla*, 530 F.3d 300, 309–10 (4th Cir. 2008). "Expert" testimony is not necessary, however, when facts are "common knowledge" or may be easily understood by the trier of fact. *See Persinger v. Norfolk & Western Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990).

Although the Insurers offer Brown's testimony for his expertise in statistical analysis, his report does not discuss statistical analysis, and he did not conduct such an analysis in concluding that thousands of claims presented to the Trust were noncompensable and that the Trust's procedures are unreliable. During the November 20, 2013, motions hearing, the Insurers clarified that Brown's testimony is meant to provide context for the Trust's system of evaluating and resolving claims.[5] But this testimony does not present any facts beyond the comprehension of the trier of fact. Rather, Brown provides an explanation that could be made by calling a nonexpert, fact witness. Indeed, there are other witnesses the Insurers may call to explain the Trust's procedures, such as Trustee T. Dennis Feeley. The court, therefore, does not find an expert is necessary. Porter Hayden's motion to exclude Brown's testimony will be granted.

---

[5] The Insurers also stated at the motions hearing that Brown's testimony is meant "to compare the claims that Porter Hayden was paying in the tort system to the claims that are being paid now by the Trust." (*See* Nov. 20, 2013, Hr'g Tr. at 74:11–13.) But this comparison is made by Mullin, whose testimony, to the extent explained below, will be admitted. Accordingly, Brown's testimony on comparable tort claims is not necessary.

5

B.  **Motion to Exclude Mullin's Testimony**

According to Porter Hayden, Mullin's testimony must be excluded because: (1) his opinions relate to topics not relevant under Maryland law; (2) his testimony on unimpaired claims is based on Brown's inadmissible testimony; (3) his methodology is not reliable and cannot be tested or duplicated; (4) his methodology is biased and ignores certain factors; and (5) the Insurers cannot challenge the reasonableness of the Trust's settlement values.[6]  While Porter Hayden's first argument provides a basis for excluding part of Mullin's testimony, none of the other arguments justify excluding the remainder of the testimony.

As an initial matter, the court agrees with Porter Hayden that, to the extent that Mullin relies on the Insurers' interpretation of the horizontal exhaustion rule[7] to decide the loss allocable to Porter Hayden's excess insurance policies, his testimony must be excluded.  In its January 2, 2014, opinion, the court set forth its understanding of the horizontal exhaustion rule and, in so doing, rejected the Insurers' interpretation of the rule.  (*See* ECF No. 367 at 5–6.)  Mullin's report does not apply the horizontal exhaustion rule as explained in the court's January 2, 2014, opinion.  Instead, it clearly applies the Insurers' interpretation in concluding that Porter Hayden probably cannot access its excess insurance.  (*See* Mullin's Rep. at 8, 24–25 (suggesting that, because operations claims are not subject to an aggregate limit under Porter Hayden's primary insurance policy, excess insurance may never become available); *see also* Dep. of Mullin, ECF No. 343-3, at 13:9–14 (stating that Mullin relied on counsel for the Insurers for "the proper interpretation of Maryland law" and that he "executed the allocations [among primary and excess

---

[6] The court need not respond to this fifth argument, which was rejected in another of its opinions.
[7] The horizontal exhaustion rule refers to Maryland law governing the allocation of liability among primary and excess liability insurers.  *See Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 314–16, 802 A.2d 1070, 1104–05 (2002).

coverage] under that interpretation").) Accordingly, Mullin's testimony regarding the loss allocable to Porter Hayden's excess insurance policies will be excluded.

The court does not agree that Mullin's testimony on Level I unimpaired claims is based on Brown's inadmissible testimony. Although he does mention that Brown came to a similar conclusion, (*see* Mullin's Rep. at 9), Mullin does not rely on this conclusion but rather conducts an independent examination of the tort history of unimpaired claims and the percentage of those claims that have moved from the inactive docket to the active docket. The court will not exclude Mullin's testimony on Level I claims.

The court finds Mullin's methodology in comparing the Trust's valuation of claims to "historical" amounts paid by Porter Hayden in the tort system reliable. Mullin's report details the amounts Porter Hayden paid in the tort system for various types of asbestos claims, and then quite simply compares those amounts to the Trust's settlement values for those kinds of claims. Mullin's methodology is replicable; indeed, Porter Hayden submitted a rebuttal report from expert Christopher P. Makuc, in which he included charts recreating Mullin's valuation of the Trust's settlements. (Makuc's Rep., ECF No. 347-3, at 3.) Mullin's testimony regarding how the Trust's valuation of claims compares to amounts paid in the tort system will be admitted.

Finally, Porter Hayden's claim that Mullin's testimony is biased does not warrant the exclusion of his testimony. Porter Hayden argues that (1) Mullin ignored defense costs incurred in the tort system and (2) relied on a limited data sample in comparing the Trust's valuation of claims with tort settlements. Those arguments, although appropriate fodder for cross-examination, do not change the court's earlier conclusion that Mullin's methodology is reliable under Rule 702(c). *See Daubert*, 509 U.S. at 596; *see also Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (explaining that, "[s]o long as the methods employed are scientifically

7

valid, . . . mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony"). In other words, those arguments go only to the weight of Mullin's testimony, not its admissibility. *See Mack v. AmerisourceBergen Drug Corp.*, 671 F. Supp. 2d 706, 712 (D. Md. 2009) (suggesting that bias may undermine the weight given—rather than the admissibility of—expert testimony). Thus, in sum, Porter Hayden's motion to exclude Mullin's testimony will be granted in part—as to his testimony regarding the loss allocable to Porter Hayden's excess insurance policies—and otherwise denied.

## CONCLUSION

For the reasons stated above, Porter Hayden's motion to exclude Brown's testimony will be granted, and the motion to exclude Mullin's testimony will be granted in part and denied in part. A separate order follows.


March 31, 2014                                          /s/
Date                                            Catherine C. Blake
                                                United States District Judge

8