**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al.

v. Civil Nos. CCB-03-3408, CCB-03-3414

PORTER HAYDEN COMPANY, et al.

******

**MEMORANDUM**

National Union Fire Insurance Company of Pittsburgh, Pa. and American Home Assurance Company (collectively, "the Insurers") seek summary judgment to bar coverage for settlements made by the Porter Hayden Bodily Injury Trust ("the Trust") because (1) those settlements violate the "voluntary obligation" provision and (2) are unreasonable. Also pending before the court is Porter Hayden Company's ("Porter Hayden") motion for summary judgment. The issues in this case have been fully briefed, and oral argument was held on November 20, 2013. For the reasons stated below, the Insurers' motion for summary judgment will be granted in part—as to their ability to challenge the reasonableness of the Trust's settlements and as to Porter Hayden shouldering the ultimate burden of persuasion to show the settlements are reasonable—and otherwise denied. Porter Hayden's motion, as it pertains to whether the Trust pays claimants reasonable values to resolve claims and whether the Insurers have waived their right to object to settlements paid by the Trust, will be granted in part—as to the Insurers' waiver of the voluntary obligation provision—and otherwise denied.

**BACKGROUND**

Since Porter Hayden ceased installing asbestos-containing insulation materials, it has been sued by thousands of individuals for injuries related to asbestos exposure. In March 2002, following thousands of asbestos-related claims, Porter Hayden filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland. On June 30, 2006, the bankruptcy court confirmed Porter Hayden's Third Amended Second Modified Plan of Reorganization ("the Plan"). Although the Insurers initially objected to the Plan, they eventually withdrew their objections in exchange for Porter Hayden's stipulation that confirmation of the Plan would not deprive them of any defenses under applicable non-bankruptcy law. (*See* Stipulation, ECF No. 132-13, at 3–4.)

The Plan established the Trust to resolve asbestos claims against Porter Hayden pursuant to Trust Distribution Procedures ("TDP"). The TDP outline "the qualifications for an asbestos claim, the evidence needed to support the existence of such a claim, standards ranking the relative severity of claims . . . , and an associated schedule of values for each severity-level of claim." (Porter Hayden's Mem. in Opp'n, ECF No. 349, at 5.) The TDP use the following categories of claims: "Bilateral Asbestos-Related Non-Malignant Disease (Level I), Disabling Severe Asbestosis (Level II), Other Cancer (Level III), Lung Cancer (Level IV)[,] and Mesothelioma (Level V)." (Insurers' Corrected Mot. for Summ. J., ECF No. 345, at 8.) According to the Insurers, Level I nonmalignant claims do not require a showing of physical impairment in the form of decreased lung function. (*See id.* at 10–11; *see also* Insurers' Reply, ECF No. 356, at 12–13.)[1] Instead, Level I nonmalignant claims require X-ray changes, which may only reflect the condition of pleural plaque that does not cause pain and has no health

[1] Porter Hayden believes that Level I claims do require a showing of physical impairment. (*See* Porter Hayden's Mem. in Opp'n at 20 n.9.)

significance. (*See* Insurers' Reply at 12–13.) The Insurers maintain that these kinds of claims are not compensable in the Maryland tort system. (*Id.* at 13–14.) In Maryland, a claim cannot move off the inactive docket without a showing of physical impairment. (*See* Insurers' Corrected Mot. for Summ. J. at 10–11.)

In February 2009, before the Trust began resolving claims, Porter Hayden wrote a letter to the Insurers, requesting their assistance in evaluating and resolving claims. (*See* Feb. 26, 2009, Letter from T. Dennis Feeley, ECF No. 344-10.) The letter indicates that Porter Hayden had already given the Insurers access to submissions through a claims database,[2] provided multiple reports regarding the submissions, and invited their participation in evaluating submissions. (*Id.*) Nevertheless, Porter Hayden was providing the Insurers with "one last opportunity" to be involved. (*Id.*) Porter Hayden did not hear from the Insurers regarding the resolution of any asbestos claims.

**STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

---

[2] The Insurers have access "through a web portal to all information provided by those alleging Porter Hayden's liability for asbestos injury." (Porter Hayden's Mot. for Summ. J., ECF No. 344-1, at 10.) Thus, using the Porter Hayden claims database, the Insurers could have reviewed—and, if they so chose, objected to—every claim resolved by the Trust.

there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**ANALYSIS**

The Insurers argue that the Trust assumed obligations to claimants without their consent, in violation of the policies' voluntary obligation provision.[3] This argument must be rejected. As explained in *U.S. Fid. and Guar. Co. v. Nat'l Paving and Contracting Co.*:

> It is settled law that where there is a denial of liability and a refusal to defend on the part of the insurer . . . , the insured is no longer bound by a provision of a policy prohibiting settlement of claims without the insurer's consent, or a provision making the insurer's liability dependent on the obtaining of a judgment against the insured. The insured under such circumstances may make a reasonable compromise of the suit without losing his right to recover from the insurer under the policy.

228 Md. 40, 48, 178 A.2d 872, 875 (1962). In that case, an insurer was notified of a proposed settlement, but it "declined by its silence to participate." *Id.* Thus, when the insurer "refused and National proceeded with reasonable prudence to settle the claim . . . , [the insurer] could no longer rely on provisions in the contract precluding a settlement without its consent or requiring a judgment against the insured." *Id.* at 49, 178 A.2d at 876; *see also Nat'l Union Fire Ins. Co. of*

---

[3] This provision provides, in relevant part, that "the insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident." (Porter Hayden's Mem. in Opp'n at 8–9 (internal quotation marks omitted); *see also* Insurers' Corrected Mot. for Summ. J. at 14.)

Case 1:03-cv-03414-CCB Document 56 Filed 03/31/14 Page 5 of 11

*Pittsburgh, Pa. v. Porter Hayden Co.*, 408 B.R. 66, 78 (D. Md. 2009) (concluding that National Union could not invoke a "[n]o actions" clause to bar Porter Hayden's suit when National Union "had sufficient notice that claimants were seeking damages from Porter Hayden . . . but refused to participate" in the defense or settlement of those claims). Here, Porter Hayden notified the Insurers of the claims presented to the Trust, but like the insurers in *Nat'l Paving* and *Nat'l Union Fire*, "the Insurers simply chose not to respond." (Porter Hayden's Mem. in Opp'n at 9.)[4] Accordingly, the Insurers waived the voluntary obligation provision, and may not rely on that provision to disclaim coverage.

The Insurers submitted additional briefing on *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.* to argue that they did not waive the voluntary obligation provision, but reliance on that case is inapposite and does not alter the above analysis. 738 F.3d 95, 106–07 (4th Cir. 2013) (deciding that the insurer did not waive its voluntary payment defense). In *Perini*, the insured did not notify the insurer of the claim filed against it, nor did the insured seek to obtain the insurer's consent prior to settling the claim. *Id.* at 99. Here, before the Trust began resolving claims, Porter Hayden notified the Insurers of claims presented to the Trust; indeed, it did so multiple times. Porter Hayden also sought the Insurers' assistance in evaluating and resolving claims. Thus, on the issue of whether the Insurers waived the voluntary obligation provision,

---

[4] The Insurers attempt to distinguish *Nat'l Paving* on the basis that it did not involve a voluntary obligation clause but rather a "consent to settle" clause. But the *Nat'l Paving* court did not seem so limited in describing the "settled law": The court referred to "a provision of a policy prohibiting settlement of claims without the insurer's consent, or a provision making the insurer's liability dependent on the obtaining of a judgment against the insured." 228 Md. at 48, 178 A.2d at 875. Moreover, the Insurers' description of the voluntary obligation provision as "prevent[ing] the insured from voluntarily assuming any obligation without the insurer's consent" matches closely the provision described by the *Nat'l Paving* court. (Insurers' Supplement, ECF No. 369, at 1.)

Porter Hayden's motion for summary judgment will be granted, and the Insurers' motion will be denied.[5]

Nevertheless, although the Insurers may not disclaim coverage under the voluntary obligation provision, they may challenge the reasonableness of the settlements. The Insurers preserved the right to challenge the settlements' reasonableness when they entered into the stipulation with Porter Hayden that confirmation of the Plan would not deprive them of any applicable non-bankruptcy law defenses. Moreover, *Nat'l Paving* suggests that even an insurer who refuses to defend the insured reserves the ability to challenge the reasonableness of the insured's settlement. *See* 228 Md. at 48, 178 A.2d at 875 (emphasis added) (stating that, "where there is a denial of liability and a refusal to defend on the part of the insurer," the insured may make a "*reasonable* compromise of the suit"); *see also Gildenhorn v. Columbia Real Estate Title Ins. Co.*, 271 Md. 387, 394–95, 317 A.2d 836, 840 (1974).

Turning to which party has the burden of proof on reasonableness, the court determines the Insurers have the burden of production, but Porter Hayden has the ultimate burden of proof. According to the Insurers, the party seeking indemnification for a settlement has the burden to prove the settlement amount is reasonable; however, they cite federal admiralty cases that do not apply Maryland law. *See Van Ommeren Bulk Shipping B.V. v. Cooper/T.Smith Stevedoring Co., Inc.*, 35 F. Supp. 2d 469, 472 (D. Md. 1999); *Am. Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc.*, No. WDQ-03-3462, 2008 WL 2120704, at *2 (D. Md. Jan. 16, 2008). By contrast, Porter Hayden cites *Port E. Transfer v. Liberty Mut. Ins. Co.*, 330 Md. 376, 624 A.2d 520 (1993), for the proposition that, under Maryland law, a breaching party challenging the

[5] Having decided that the Insurers waived the voluntary obligation provision, the court need not delve into whether they must show prejudice to avoid coverage under the voluntary obligation clause.

reasonableness of a settlement has the burden of proof; but Porter Hayden conflates the concepts of burden of proof and burden of production. In *Port E. Transfer*, the U.S. District Court for the District of Maryland certified to the Maryland Court of Appeals "a question involving the required elements of a contract claim brought by an insurer against its insured for unpaid retrospective premiums and involving the allocations of burdens of proof and production of evidence in such an action." *Id.* at 377, 624 A.2d at 520. Under the retrospective premium arrangement, the insurer had to investigate, settle, and provide the defense for all covered claims. *Id.* at 378, 624 A.2d at 520. The insurer responded to "hundreds of claims," keeping the insured "regularly apprised of the status of those claims." *Id.*, 624 A.2d at 521. But when the insurer sought additional premiums from the insured, the insured declined to pay. *Id.* at 378–79, 624 A.2d at 521. The Maryland Court of Appeals held:

> [I]n a case such as this, although the ultimate burden of proof of its claim remains at all times with the insurer, the burden of production of evidence of violation by the insurer of an implied condition of good faith is upon the insured. We believe this allocation of the burden of production will provide adequate protection for the party claiming bad faith, but will not unnecessarily burden the insurer or the court with protracted proceedings and unnecessary production of evidence concerning matters not legitimately at issue.

*Id.* at 386, 624 A.2d at 524–25. Thus, the Maryland Court of Appeals placed "the burden of production of evidence of violation"—but not the burden of persuasion—on the challenging party.

Applying the reasoning of *Port E. Transfer* to the present case, the court recognizes the difficulties inherent in requiring a party settling many claims to show the reasonableness of each settlement. *See* 330 Md. at 386, 624 A.2d at 524–25.[6] Still, the court cannot conclude based on

[6] For this reason, the court notes that should the Insurers satisfy their burden of production, this does not necessarily mean Porter Hayden must show each settlement is reasonable to satisfy its burden of proof. For example, if the Insurers satisfy their burden of production by offering evidence regarding how the Trust's valuation of claims compares to "historical" amounts paid by

*Port E. Transfer* that the Insurers must shoulder the ultimate burden of persuasion. Rather, the Insurers have the initial burden of production, such that they must produce sufficient evidence to raise a triable issue with regard to the reasonableness of settlements. *See id.* at 387, 624 A.2d at 525. If the Insurers satisfy their burden of production, then Porter Hayden has the ultimate burden of persuasion to show the settlements are reasonable. *See id.* Accordingly, to the extent that the Insurers' motion for summary judgment seeks a ruling that they may challenge the reasonableness of the Trust's settlements and that Porter Hayden bears the ultimate burden of persuasion on reasonableness, it will be granted. Porter Hayden's motion, as it pertains to whether the Insurers may challenge the settlements' reasonableness and which party has the burden of proof, will be denied.

Next, the court cannot at this time determine whether the Trust's settlements are reasonable or unreasonable as a matter of law. The Insurers argue that the Trust's settlements are unreasonable for two reasons: "First, the Trust's payments to claimants with unimpaired nonmalignant claims who would not be paid at all in the tort system are patently unreasonable because there is no underlying legal liability for the claim. Second, the Trust's wildly inflated payments of up to 20 times what the claim would be worth in the tort systems also are unreasonable as a matter of law." (Insurers' Corrected Mot. for Summ. J. at 19.) The Insurers' first argument must be rejected, as their expert, Dr. Charles H. Mullin ("Mullin"), concedes that at least some Level I nonmalignant claims may become compensable in the Maryland tort system. (*Id.* 12, 22 n.6.) Given this concession, the court cannot conclude that all Level I claims are noncompensable and, therefore, payment of those claims was unreasonable. Responding to

Porter Hayden in the tort system or the process by which the Trust resolves claims, Porter Hayden may satisfy its burden of proof by providing the same kind of evidence. In other words, the kind of evidence Porter Hayden must present to satisfy its burden of proof depends on the kind of evidence first presented by the Insurers.

the Insurers' second argument, Porter Hayden posits that the Insurers looked at tort values between 1998 and early 2001, and "[a]sbestos settlement values in the tort system have increased significantly since 2001." (Porter Hayden's Mem. in Opp'n at 23–24.) In addition, according to Porter Hayden, the Insurers do not consider how the Trust helped avoid expensive defense costs: "Porter Hayden spent an average of $4.75 million per year on defense costs for asbestos claims in the tort system and the amount was growing each year . . . ." (*Id.* at 24.) In light of those issues, the court cannot decide that the Trust's settlements are unreasonable as a matter of law. In sum, to the extent that the Insurers seek summary judgment declaring the settlements unreasonable, their motion will be denied.

Porter Hayden's motion for summary judgment, as it relates to whether the settlements are reasonable as a matter of law, also will be denied. Porter Hayden argues for summary judgment declaring the settlements reasonable because (1) the Insurers waived the opportunity to challenge reasonableness and (2) the Trust's settlement values are presumptively reasonable. As explained above, however, the Insurers may indeed challenge the settlements' reasonableness. Turning to Porter Hayden's second argument, the court rejects the suggestion that TDP values are presumptively reasonable just by virtue of the fact that they were approved by the bankruptcy court as part of the reorganization plan. (*See* Porter Hayden's Mot. for Summ. J. at 8.) The court reiterates that the Insurers have the burden of production at trial; if they satisfy this burden, then Porter Hayden has the ultimate burden of proof to show the settlements are reasonable.

Finally, the court notes that the question remains whether, under either side's valuation, some or all of Porter Hayden's primary insurance policies are in fact exhausted under the

horizontal exhaustion rule, as set forth in the court's January 2, 2014, Memorandum.[7] (*See* ECF No. 367.) Mullin estimates that the claims resolved by the Trust have a reasonable value of no more than $100 million in the tort system. (*See* Mullin's Rep., ECF No. 342-5, at 8.) If the court, applying Maryland's method of pro rata allocation by time on the risk, were to allocate the $100 million to Porter Hayden's primary insurance policies, it appears that certain years of primary coverage would be exhausted. (*See id.* at 24–25 (suggesting that at least some—but not all—primary policies may be exhausted, although incorrectly concluding that this means excess insurance coverage may never become available).)[8] As explained in the court's January 2, 2014, Memorandum, if primary insurance as to a particular year on the risk has been exhausted, then an excess policy applicable to that year must pay its pro rata share.

---

[7] The court rejects the Insurers' claim that, in answering this question, the Porter Hayden claims database is inadmissible hearsay. The database is admissible under Fed. R. Evid. 803(6), which provides that "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The Insurers argue that Porter Hayden's expert witness, Christopher P. Makuc—who relies on the database for his opinions—cannot testify as to whether the database meets all the Rule 803(6) requirements. Upon review of Robert Capritti's declaration, however, the court determines the database meets all the above requirements. (*See* Decl. of Capritti, ECF No. 133-8.) Further, the database is admissible pursuant to Rule 1006, under which a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.

[8] As explained in another of its opinions, the court will not consider Mullin's testimony regarding the loss allocable to Porter Hayden's excess insurance policies because it relies on the Insurers' incorrect interpretation of the horizontal exhaustion rule.

**CONCLUSION**

For the reasons stated above, the Insurers' motion for summary judgment will be granted in part and denied in part, and Porter Hayden's motion for summary judgment—as it pertains to the reasonableness of the Trust's settlements and whether the Insurers have waived their right to object to those settlements—will be granted in part and denied in part. A separate order follows.

March 31, 2014
Date

/s/
Catherine C. Blake
United States District Judge